THE KINDER LAW GROUP, APC
Brian P. Kinder (SBN 212332)
bkinder@tklglaw.com
19200 Von Karman Avenue, Fourth Floor
Irvine, California 92612
Telephone: (949) 216-3070
Facsimile: (949) 216-3074

LAW OFFICE OF F. ELLIOT GOLDMAN
F. Elliot Goldman, Esq. (SBN 091337)
felliotgoldman@msn.com
420 S. Brea Boulevard
Brea, California 92821
Telephone: (714) 990-3444

Attorneys for Plaintiff
Goldenwest Diamond Corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

GOLDENWEST DIAMOND CORPORATION, a California corporation,

Plaintiff,

vs.

JEWELRY EXCHANGE CENTER INC., a California corporation; EDWIN NOVEL JEWELRY DESIGN, INC., a California corporation; EDWIN NOVEL, an individual; and DOES 1 through 100, inclusive,

Defendants.

Case No.: 25-cv-2760

**COMPLAINT FOR:**

1. Federal Trademark Infringement (15 U.S.C. § 1114);
2. Federal False Designation of Origin and Unfair Competition (15 U.S.C. § 1125(a));
3. California State Registered Trademark Infringement (Cal. Bus. & Prof. Code 14200 et seq.);
4. Common Law Trademark Infringement;
5. California State False Advertising (Cal. Bus. & Prof Code § 17500);
6. California State Unfair Competition (Cal. Bus & Prof Code § 17200); and
7. Common Law Unfair Competition
8. Violation of California's Anti-Phishing Act of 2005 (Cal. Bus. & Prof Code § 22948 et seq.)
9. Intentional Interference with Prospective Economic Relations
10. Negligent Interference with Prospective Economic Relations

Plaintiff GOLDENWEST DIAMOND CORPORATION ("**Plaintiff**"), for its Complaint against Defendant JEWELRY EXCHANGE CENTER INC. ("**Defendant JE CENTER**"), Defendant EDWIN NOVEL JEWELRY DESIGN, INC. ("**Defendant ENJD**") and EDWIN NOVEL ("**Defendant NOVEL**") hereby alleges as follows:

## NATURE OF ACTION

1. Plaintiff sells fine jewelry, operates a nationwide chain of jewelry stores, and maintains a website at www.JewelryExchange.com all under the famous and incontestable JEWELRY EXCHANGE® mark (which is registered with both the U.S. Patent and Trademark Office and California Secretary of State as set forth below). Within the last several weeks – and during the peak holiday shopping season when jewelry retailers earn a substantial portion of their annual revenue – Defendants began running sponsored ad listings that prominently display **JEWELRY EXCHANGE CENTER** (notably, during the drafting of this complaint, Defendants have since altered the ads to display **JEWELRY EXCHANGE** alone). When users click on these sponsored ad links, they are directed to a website located at the domain name www.JewelryExchangeCenter.com where Defendants prominently display the mark **JEWELRY EXCHANGE** CENTER (the word 'CENTER' being virtually illegible) with the clear intention of confusing the public (substantial actual confusion has already resulted) into believing that Defendants website is, or is somehow affiliated with, Plaintiff as follows:






2. Plaintiff learned of the foregoing after Defendants deceived customers seeking to purchase from Plaintiff, took their orders and payments, and then failed to deliver the products. As a result, Plaintiff began receiving emails, text messages, phone calls and in-store visits from angry customers who report that Defendants had falsely represented to the customer that Defendants are the same company as Plaintiff…just a different corporation. As a result, Plaintiff seeks a temporary restraining order, temporary and permanent injunctive relief, and monetary relief, including damages, profits, punitive damages, corrective advertising, statutory damages, attorney's fees, prejudgment interests and costs) from Defendants for their acts of infringement, false advertising, unfair competition, phishing, and interference with prospective economic relationships.

## PARTIES

3. Plaintiff is, and at all times herein mentioned was, a corporation duly organized and existing under the laws of the State of California, with its principal place of business located at 15732 Tustin Village Way, Tustin, California 92780 in Orange County, California.

4. Plaintiff has complied with all statutory requirements that are a necessary prerequisite to the bringing of the instant action.

5. Defendant JE CENTER is, and at all times herein mentioned was, a corporation allegedly duly organized and existing under the laws of the State of California, with its principal place of business in Los Angeles County, California.

6. Pursuant to the Articles of Incorporation that Defendant JE CENTER caused to be recorded with the California Secretary of State dated June 4, 2025 (the 6/4/25 AOI"), Defendant NOVEL is the incorporator and agent for service of process of Defendant JE CENTER. A true and correct copy of the 6/4/25 AOI is attached as **Exhibit 1**.

/ / /

/ / /

7. Plaintiff is informed and believes and thereon alleges that Defendant NOVEL is the sole owner of Defendant JE CENTER and, as such, is responsible for controlling the actions of the entity.

8. At all relevant times herein, Defendant JE CENTER was, and is, a direct competitor of Plaintiff.

9. Defendant ENJD is, and at all times herein mentioned was, a corporation allegedly duly organized on January 13, 2017, under the laws of the State of California, with its principal place of business in Los Angeles County, California.

10. Pursuant to the most recent Statement of Information that Defendant ENJD caused to be recorded with the California Secretary of State dated April 9, 2024 ("the 4/9/24 SOI"), Defendant NOVEL is the sole officer and director of Defendant ENJD and, as such, is solely responsible for controlling the actions of the entity. A true and correct copy of the 4/9/24 SOI is attached as **Exhibit 2**.

11. At all relevant times herein, Defendant ENJD was, and is, a direct competitor of Plaintiff.

12. Plaintiff is informed and believes and thereon alleges that Defendant NOVEL is, and at all times herein mentioned was, an individual, residing in the County of Los Angeles, State of California.

13. The true names and capacities of Defendant DOES 1 through 100, inclusive, whether individual, corporate, associate, or otherwise, are unknown to Plaintiffs who therefore sue Defendant DOES by such fictitious names. Plaintiffs will seek leave of this Court to amend this Complaint to show said Defendant DOES' true names and capacities when same have been ascertained.

14. Plaintiff is informed and believes and upon such information and belief alleges that each of the Defendants named herein as DOES 1 through 10, inclusive, were, and are in some manner responsible for the actions, acts, and omissions herein alleged, and for the damage caused by the Defendants and are, therefore, jointly and severally liable for the damages caused to Plaintiffs.

15. Plaintiff is informed and believes and upon such information and belief alleges that at all times mentioned herein, Defendants, and each of them, were the agents, employees, and officers of each of the remaining Defendants and in doing the things herein alleged, were acting within the scope, course, and purpose of said agency or employment, and with permission and consent of each of the remaining Defendants.

16. Plaintiff is informed and believes and upon such information and belief alleges that each of the Defendants, including DOES 1 through 100, inclusive, were, and at all times herein mentioned, acting in concert and in conspiracy with each and every one of the named Defendants. Hereinafter, Defendant JEC, Defendant ENJD, Defendant NOVEL and Defendant DOES 1-100, inclusive, are collectively referred to as "**Defendants**").

17. Plaintiff is informed and believes and thereon alleges that Defendant JE CENTER and Defendant ENJD are each, and at all times herein mentioned were, the alter-egos of Defendants NOVEL, and DOES 1 through 100, inclusive, and each of them, and there exists, and at all times herein mentioned there has existed, a unity of interest and ownership between both Defendant JE CENTER and Defendant ENJD with Defendants NOVEL and DOES 1 through 100, inclusive, and each of them. Plaintiff is informed and believes the individuality and separateness of Defendant JE CENTER and Defendant ENJD has ceased, if in fact it ever existed, and Defendants NOVEL, and DOES 1 through 100, inclusive, and each of them, individually and/or jointly, are the alter-ego of Defendant JE CENTER and Defendant ENJD in that without limitation: i) Defendants NOVEL, and DOES 1 through 100, inclusive, and each of them, have completely and individually dominated and controlled the business and affairs of Defendant JE CENTER and Defendant ENJD; ii) they have commingled the funds and assets of Defendant JE CENTER and Defendant ENJD with their own funds and assets; iii) they have used the funds and assets of Defendant JE CENTER and Defendant ENJD for their own personal uses; iv) they have caused assets of Defendant JE CENTER and Defendant ENJD to be transferred to themselves without adequate consideration; v) they

have withheld funds belonging to Defendant JE CENTER and/or Defendant ENJD for their own use and/or benefit to the detriment of the creditors of Defendant JE CENTER and Defendant ENJD; vi) they have withdrawn funds from Defendant JE CENTER's and Defendant ENJD bank accounts for their own personal uses; vi) and/or they have failed to maintain proper corporate records and minutes for Defendant JE CENTER and Defendant ENJD. Adherence to the fiction of the separate existence of Defendant JE CENTER and Defendant ENJD, as entities separate and distinct from Defendants NOVEL, and DOES 1 through 100, inclusive, and each of them, would permit abuse of the Corporate privilege, and would sanction fraud and promote injustice, in that without limitation Defendant JE CENTER and Defendant ENJD was conceived, intended and used by Defendants NOVEL, and DOES 1 through 100, inclusive, and each of them, as a mere shell, instrumentality, and conduit through which Defendants NOVEL, and DOES 1 through 100, inclusive, and each of them, could, and have, carried on their own business and affairs with Plaintiff and others as if Defendant JE CENTER and Defendant ENJD did not exist.

## **JURISDICTION**

18. This Court has original subject matter jurisdiction over this action pursuant to 15 U.S.C. §1121 and 28 U.S.C. §§ 1331 and 1338. This Court has pendant and supplemental jurisdiction over all related claims pursuant to 28 U.S.C. §1367. Plaintiff has proper standing to maintain this complaint against Defendants.

19. This Court has personal jurisdiction over Defendant JE CENTER and Defendant ENJD because each has a principal place of business in the State of California, regularly conduct business activities, including advertising and offering services in this State and in the counties of Los Angeles, Orange, Riverside and San Bernardino Counties, thereby purposefully availing themselves of the privilege of acting and conducting business in the State of California.

/ / /

/ / /

20. This Court has personal jurisdiction over Defendant NOVEL because he resides and conducts business in the State of California, thereby purposefully availing himself of the privilege of acting in the State of California.

## VENUE

21. This action arises out of the transaction of business and other activities of Defendants within the Central District of California and threatened and actual harm to Plaintiff in this judicial district by reason of Defendants' conduct alleged herein. Defendants regularly conduct and solicit business, engage in other forms of conduct, and derive revenue from doing business in this judicial district. Further, Plaintiff conducts business, and performs services in this judicial district, and a substantial part of the events or omissions giving rise to the claims occurring in this judicial district. Accordingly, venue is proper in this district under 28 U.S.C. §§ 1391(a)(2), (b) and (c) as well as 28 U.S.C. §§ 1400(a) and (b).

## STATEMENT OF FACTS

### A. Plaintiff is an industry leader.

22. Anyone in Southern California who watches television knows the iconic television advertisements that end with the announcer proclaiming the "Jewelry Exchange in Tustin!" With nearly $2B in sales over the last twenty years and over $300 Million in nationwide television, print and internet advertisements, Plaintiff is among the most recognized, trusted and sought after jewelry lines and jewelry stores in the country.

23. For over four decades, since at least as early as August 11, 1984, Plaintiff has been a leader in the jewelry industry and has continuously promoted and sold JEWELRY EXCHANGE branded jewelry and operated a nationwide chain of JEWELRY EXCHANGE branded stores where Plaintiff provides jewelry sales services.

/ / /

/ / /

24. Plaintiff's first jewelry store opened in Santa Ana, California in 1986 and was moved to the current Tustin location in 1995. Plaintiff's iconic Tustin building (a true and correct copy of the photo from Google Maps pictured below and showing the Tustin location with a view of the 55 freeway is attached at **<u>Exhibit 3</u>**) is adjacent to the 55 freeway and is viewed by millions of commuters annually:




25. In addition to the Tustin, California store, Plaintiff also operates a nationwide chain of brick-and-mortar retail jewelry stores across eleven (11) states, including, locations in the areas surrounding Northern California (Redwood City); Seattle, Washington; Greenwood Village, Colorado; Phoenix, Arizona; Minneapolis, Minnesota; Villa Park, Illinois; St. Louis, Missouri; Detroit, Michigan; Hackensack, New Jersey; Philadelphia, Pennsylvania; and Boston, Massachusetts.

**B. <u>Plaintiff's Rights to Trade Name and Common Law Trademark Rights.</u>**

26. Plaintiff first filed for and obtained the fictitious business name "JEWELRY EXCHANGE" in Orange County on or about July 3, 1984, and has continuously maintained its registration of the fictitious business name "JEWELRY EXCHANGE" in Orange County, California. Plaintiff also has and maintains fictitious business/trade/assumed names in multiple counties and or states throughout the United States, including, but not limited to, New Jersey, Pennsylvania, Illinois, Colorado, Washington, and others.

27. For over four decades, Plaintiff has also continuously manufactured and sold fine jewelry under and in connection with the "JEWELRY EXCHANGE" trademark.

28. For over four decades, Plaintiff has continuously provided, among other services, "jewelry sales" services through both brick-and-mortar retail jewelry stores and through online retail jewelry stores all under and in connection with the "JEWELRY EXCHANGE" service mark.

29. Since 1998, Plaintiff has continuously operated and maintained a website prominently displaying the JEWELRY EXCHANGE mark in order to promote sales of jewelry products and to promote jewelry sales through Plaintiff's online retail jewelry store. Plaintiff's website is highly trafficked and appears at the domain name www.JewelryExchange.com. A true and correct copy of Plaintiff's website is attached as **Exhibit 4**.

30. By continuously using the JEWELRY EXCHANGE trade name, trademark and service mark, Plaintiff has garnered substantial common law rights and goodwill and enjoys a reputation for being one of the most recognized, trusted and the most prominent continuously operating jewelry manufacturers and jewelry sales stores in the country.

31. Plaintiff has built up valuable goodwill in this trade name and common law trademark and service mark rights which have come to be associated exclusively with Plaintiff's business by the public generally throughout the United States, including, but not limited to, the Southern California area, through and by Plaintiff's extensive advertising and promotion from August 1984, to the present time, and resulting in over $2B in sales over the last twenty years.

/ / /

/ / /

/ / /

/ / /

**C. <u>Plaintiff's California State and Federal Trademark Registrations.</u>**

32. Plaintiff also took the precaution of applying to register the JEWELRY EXCHANGE™ trademark and service mark with the California Secretary of State and, as a result, Plaintiff is the owner of, among numerous others, the following valid and existing California State trademark and service mark registrations:

| **MARK** | **REG. NO.** | **REG. DATE** | **GOODS/SERVICES** | **EX.** |
|---|---|---|---|---|
| JEWELRY EXCHANGE | 042194 | July 13, 1993 | Jewelry sales (Class 101). | 5 |
| JEWELRY EXCHANGE | 111785 | May 24, 2006 | Jewelry, including, gold and other precious metals, diamonds and other precious stones, and related goods (Class 14). | 6 |

33. True and correct copies of the Official Certificates of Registration from the California Secretary of State for the above registrations are attached hereto at the Exhibits corresponding to the table above.

34. Plaintiff also took the precaution of applying to register the JEWELRY EXCHANGE trademark with the U.S. Patent and Trademark Office and, as a result, Plaintiff is the owner of, among numerous others, the following valid and existing U.S. trademark registration:

| **MARK** | **REG. NO.** | **REG. DATE** | **GOODS/SERVICES** | **EX.** |
|---|---|---|---|---|
| JEWELRY EXCHANGE | 1,862,446 | Nov. 15, 1994 | Jewelry (Class 14). | 7 |

35. True and correct copies of the Official Certificate of Registration (and Notice of Acceptance of Incontestability for Reg. '446 pursuant to 15 U.S.C. § 1065) from the U.S. Patent and Trademark Office for the above registration is attached hereto at the Exhibit corresponding to the table above.

/ / /

36. The foregoing registration is valid, subsisting, and provides constructive notice of Plaintiff's ownership, as provided by §§ 7(b) and 22 of the Federal Trademark Act of 1946, as amended.

37. The foregoing registration is also incontestable and therefore constitutes not just prima facie, but conclusive evidence of the validity of the mark, registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce pursuant to 15 U.S.C. § 1115(b).

38. Hereinafter, Plaintiff's trade name, common law trademarks, California State registered trademarks, and Federal registered trademark will be collectively referred to as "**The JEWELRY EXCHANGE® Marks**."

39. As a result of Plaintiff's promotion and sale of products and services under and in connection with The JEWELRY EXCHANGE® Marks, Plaintiff has gained significant recognition and goodwill among the relevant consuming public.

40. The JEWELRY EXCHANGE® Marks are valid, distinctive, incontestable (Reg. No. 1,862,446) and have become associated with Plaintiff and Plaintiff's jewelry products and jewelry sales services and thus exclusively identify Plaintiff's business, products and services.

**D. Defendants' Intentional Infringement, False Advertising and Unfair Competition, Phishing and Intentional/Negligent Interference.**

41. Defendant NOVEL is identified as the sole officer and director of Defendant ENJD which was incorporated almost nine (9) years ago on January 13, 2017.

42. On information and belief, in addition to the other conduct alleged herein, Defendant NOVEL and/or Defendant ENJD appear to have provided jewelry sales services through an online retail store located at the website appearing at the domain name www.EdwinNovelJewelryDesign.com and pictured below (a true and correct copy of which is attached at **Exhibit 9**):

/ / /




43. On June 4, 2025, after Defendants have been operating in the jewelry business for nine years and over forty years after Plaintiff's adoption and use of the JEWELRY EXCHANGE® Marks, Defendant NOVEL formed Defendant JE CENTER by incorporating the same as JEWELRY EXCHANGE CENTER, INC. and, on a date presently unknown to Plaintiff, began doing business under the trade name "JEWELRY EXCHANGE CENTER."

44. On a date presently unknown to Plaintiff, Defendants created a website at the domain name www.JewelryExchangeCenter.com where Defendants sell jewelry products and perform jewelry sales services through an online retail jewelry store in the state of California and nationally, all under the trade name, trademark and service mark JEWELRY EXCHANGE CENTER (with the word 'CENTER' virtually imperceivable). A true and correct copy of the website appearing at the domain name www.JewelryExchangeCenter.com is attached at **Exhibit 10**.

45. Defendants also incorporate design elements into the JEWELRY EXCHANGE CENTER mark (shown in **Exhibit 10** and below left) that generally mirror the appearance of the mark as it appears on Plaintiff's business signage (shown below right):

/ / /

/ / /

/ / /

| **Defendants' Website Header** | **Plaintiff's Tustin Store Signage** |
| --- | --- |
|   **Exhibit 10** |   **Exhibit 3** |

46. Plaintiff and Defendants are competitors in the fine jewelry market who pursue the same types of customers using overlapping channels of trade.

47. Defendants' trade name and mark is substantially similar to that of Plaintiff, and the Defendants use of the trade name and mark creates a likelihood that Plaintiff's customers, potential customers, and the public generally will be confused or misled as to the source of goods or services in that they are likely to believe that Defendants' business is identical to and/or affiliated with that of Plaintiff.

48. The manner in which Defendants use the JEWELRY EXCHANGE CENTER (with the word CENTER diminished) demonstrates an intention to create the commercial impression of the mark being JEWELRY EXCHANGE alone and to intentionally trade off the goodwill of Plaintiff.

49. After Plaintiff learned of Defendants' conduct, and discovered actual confusion occurring in the marketplace, Plaintiff sent a cease-and-desist letter to Defendants on November 18, 2025, which demanded that Defendants stop their unfair competition and infringement of the JEWELRY EXCHANGE® Marks. A true and correct copy of Plaintiff's cease-and-desist letter to Defendants dated November 18, 2025, is attached as **Exhibit 11**.

/ / /

/ / /

/ / /

**E. <u>Defendants file application for JEWELRY EXCHANGE CENTER.</u>**

50. Unbeknownst to Plaintiff, a search of the U.S. Patent and Trademark Office records reveals that, on November 24, 2025, Defendants filed an application in bad faith to the U.S. Patent and Trademark Office which seeks registration of the trademark JEWELRY EXCHANGE CENTER in connection with "Jewelry; Diamond jewelry; Gold jewelry; Jewelry rings; Jewelry for women; Jewelry for men; Jewellery; Fine jewellery; Fine jewelry; Diamond jewellery; Jewelry made in whole or significant part of Diamond Gems Gold Platinum" in Class 14. A true and correct copy of the application downloaded from the U.S. Patent and Trademark Office records is attached hereto as **<u>Exhibit 12</u>**.

51. Defendants' proof of use submitted with the '360 Application consisted of the following:




52. Within the application, Defendant NOVEL personally affirmed the following: (i) Applicant Edwin Novel, (ii) has continually used the mark JEWELRY EXCHANGE CENTER, (iii) in connection with "Jewelry; Diamond jewelry; Gold jewelry; Jewelry rings; Jewelry for women; Jewelry for men; Jewellery; Fine jewellery; Fine jewelry; Diamond jewellery; Jewelry made in whole or significant part of Diamond Gems Gold Platinum", (iv) since at least as early as April 15, 2024, (v) which statements were then affirmed under oath pursuant to the following Declaration: "The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any

registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true."

**F. <u>Defendants' Efforts to Cause Actual Confusion</u>**

53. Defendants have purchased, and continue to purchase, JEWELRY EXCHANGE as a key word to trigger sponsored ad listings that display the phrase JEWELRY EXCHANGE CENTER with a link to Defendants website at www.JewelryExchangeCenter.com as shown at bottom within the larger red circle. A true and correct printout of the Google search results for jewelry exchange dated Dec. 5, 2025, is attached hereto as **<u>Exhibit 13</u>**.

54. Defendants have also purchased, and continue to purchase, sponsored product listings that display the phrase JEWELRY EXCHANGE CENTER with a link to products featured on Defendants website at www.JewelryExchangeCenter.com as shown at bottom within the three smaller red circles. Because of the size of the sponsored product listings, only "Jewelry Ex..." appears to consumers before they click on the sponsored product listing – i.e., giving the impression that the listing is associated with the JEWELRY EXCHANGE® Marks:



**G. <u>Defendants' Redoubling of Efforts to Create Actual Confusion</u>**

55. On December 10, 2025, after Defendants were on notice from Plaintiff's cease-and-desist letter, Defendants redoubled their efforts to create confusion by modifying the sponsored ad listings above to remove the word CENTER entirely. Accordingly, the sponsored ad listings that Defendants are running at the time of this filing are for JEWELRY EXCHANGE alone. As depicted in the side-by-side comparison below, the image on the left shows Defendants initial use of the confusingly similar JEWELRY EXCHANGE CENTER mark. After Plaintiff put Defendants on notice by way of the cease and desist letter, the image on the right below shows Defendants have revised the listing to drop the word CENTER so that the listing displays the identical JEWELRY EXCHANGE mark (A true and correct screen grab of Google search results for jewelry exchange dated Dec. 10, 2025 is attached hereto as **<u>Exhibit 14</u>**).






**H. Actual Confusion and Phishing**

56. Not only was Defendants' conduct causing tremendous actual confusion before Defendants' modification of the sponsored ad listings, but Defendants' intentional and willful actions have now increased the amount of actual confusion. Plaintiff is now receiving numerous misdirected customer phone calls, emails, text messages, and in store visits, among other things, demonstrating both poor quality and actual confusion on the part of consumers as between Plaintiff and Defendants, including, the true and correct representative samples of which are attached hereto at **Exhibits 15-34** and pictured below:

**From:** Maryann [redacted]
**Sent:** Thursday, December 11, 2025 5:54 AM
**To:** Customer Care <Customercare@jewelryexchange.com>
**Subject:** Earring posts

[External] This email was sent from outside of your organization.

Hello, I received my earrings, they are beautiful, but my posts do not fit tightly.
I am concerned that they will slip off.
Thanks, Maryann




**Exhibit 15**.

57. During the time when Plaintiff was working towards preparation and filing of this complaint, Plaintiff has continued to receive misdirected phone calls, store visits

and emails among other things.

58. Plaintiff has also been receiving angry emails, such as the one below threatening to report Plaintiff for fraud, from customers who ordered products from Defendants and had not received their shipments (a true and correct copy of the email is attached as **<u>Exhibit 16</u>**):



**From:** Greg [redacted]@gmail.com>
**Sent:** Saturday, December 6, 2025 4:32 AM
**To:** Customer Care <Customercare@jewelryexchange.com>
**Subject:** Where's my order?

[External] This email was sent from outside of your organization.

If this is t shipped asap I'm reporting you for fraud.
Greg [redacted]




59. On information and belief, each of the foregoing individuals, among others, engaged with Defendants who utilized the internet, including, without limitation, the www.JewelryExchangeCenter.com web page as well as email mail messages and

correspondence, in order to solicit, request, or otherwise induce these individuals to provide identifying information (such as their name, address, telephone number, bank account number, credit card or debit card number, and other information that can be used to access the individual's financial accounts) and represented themselves to be Plaintiff and Plaintiff's business without the consent of Plaintiff.

60. Plaintiff has also received communications from customers who informed Plaintiff that they believed that they had ordered products from Plaintiff only to then have Plaintiff inform them that they had actually purchased from Defendants.

61. Plaintiff is informed and believes and thereon alleges that Defendants, their agents, representatives and/or employees have affirmatively informed and/or intentionally by omission implied to customers that Defendants are associated with and/or the same as Plaintiff, including, without limitation, the text message below received from a customer reporting to have contacted the Defendants who then told the customer that they were "same company two different corp" as depicted below (true and correct copies of the text message are attached as **Exhibit 23**):






62. Plaintiff is informed and believes and thereon alleges that as a proximate result of the advantage accruing to Defendants' business from Plaintiff's advertising, sales, and consumer recognition, particularly in Southern California, and as a proximate result of confusion, deception and or mistake, or a combination thereof caused by Defendants' sale of their services/goods bearing and/or under the name "JEWELRY EXCHANGE CENTER", Plaintiff has been deprived of substantial sales of its products and services in an amount in excess of $2 Million, according to proof.

63. Defendants, and each of them, threaten to and, unless restrained, will continue to use the trade name "JEWELRY EXCHANGE CENTER," as a result of which the public generally will be misled and deceived into believing that Defendants' business is identical to and/or affiliated with that of Plaintiff, all to the irreparable injury of and to Plaintiff's business and goodwill and to the unjust enrichment of Defendants. Plaintiff has no adequate remedy at law in that it is extremely difficult to ascertain the amount of damages to Plaintiff's business and goodwill, and only issuance of temporary restraining orders and/or injunctions will prevent the continuing and irreversible harm to Plaintiff's business, business name and goodwill, is the only way to ensure an end to the confusion, misleading and deception of the public generally and Plaintiff's customers and or potential customers specifically, and to avoid a multiplicity of judicial proceedings. Pecuniary compensation will not afford Plaintiff adequate relief for its damages.

**COUNT ONE**

**FEDERAL TRADEMARK INFRINGEMENT**

**(All Defendants - 15 U.S.C. § 1114)**

64. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

65. Plaintiff owns the valid, enforceable and incontestable U.S. trademark registration for JEWELRY EXCHANGE® identified above.

/ / /

66. Plaintiff has neither endorsed, licensed, sponsored or authorized Defendants to use the JEWELRY EXCHANGE® Marks or any other mark confusingly similar thereto nor authorized Defendants to take any of the actions complained of herein, including, representing that Defendants have an affiliation with Plaintiff in any way.

67. Defendants' activities as described herein are likely to cause confusion, mistake, and deception as to the affiliation, connection, or association of Defendant with Plaintiff, and as to the origin, sponsorship, or approval of Defendants' products, services and commercial activities.

68. Defendants knew or should have known that the selection and use of the "JEWELRY EXCHANGE" and/or "JEWELRY EXCHANGE CENTER" mark would enable Defendants to trade on the extensive and valuable goodwill and reputation belonging to Plaintiff.

69. Defendants are advertising and promoting themselves and their products and services under the "JEWELRY EXCHANGE" and/or "JEWELRY EXCHANGE CENTER" name and marks in the same channels of commerce through which Plaintiff promotes its products and services.

70. Despite prior knowledge of Plaintiff's to the JEWELRY EXCHANGE® Marks, Defendants have persisted in their use of confusingly similar marks in violation of Plaintiff's rights in and to the JEWELRY EXCHANGE® Marks.

71. By causing such a likelihood of confusion, mistake, and deception, Defendants are inflicting irreparable harm to the goodwill symbolized by the JEWELRY EXCHANGE® Marks owned by Plaintiff, for which Plaintiff has no adequate remedy at law.

72. Plaintiff has been damaged and continues to be damaged by Defendants' unauthorized use of the JEWELRY EXCHANGE® Marks in the manner described herein.

/ / /

73. Unless this Court restrains these acts of Defendant, they will continue to cause irreparable injury to Plaintiff and to the public for which there is no adequate remedy at law.

74. Defendants' use in commerce, including, without limitation, on The Website and in Sponsored Ads, without authorization from Plaintiff, of one or more marks similar to the JEWELRY EXCHANGE® mark in connection with the promotion, offering for sale and sale of competing and related products and services has caused actual confusion, deception, and mistake among the consuming public by creating the false and misleading impression that Defendants' are associated or connected with Plaintiff, or have the sponsorship, endorsement or approval of Plaintiff.

75. Unless enjoined by this Court, Defendants' activities will continue to cause actual confusion, a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Plaintiff's goodwill and reputation as symbolized by the JEWELRY EXCHANGE® mark, for which Plaintiff has no adequate remedy at law.

76. Despite Defendants having constructive and actual knowledge of Plaintiff's priority, superior rights in and ownership of the JEWELRY EXCHANGE® mark, Defendants have acted in willful violation of Plaintiff's rights. Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the JEWELRY EXCHANGE® mark to Plaintiff's irreparable injury, all with malice and oppression, and, as such, this is an exceptional case.

77. As a result of the foregoing alleged actions of Defendants, Defendants have been unjustly enriched and Plaintiff has been damaged and irreparably harmed. Because Defendants have caused and are likely to continue causing injury to the public and irreparable injury to Plaintiff for which it has no adequate remedy at law, Plaintiff is entitled to injunctive relief and to recover Defendants' profits, Plaintiff's actual damages, corrective advertising damages, trebled or enhanced profits and damages, costs of the action, and reasonable attorneys' fees all in an amount to be proven at trial

and in excess of the jurisdictional minimum of this Court pursuant to 15 U.S.C. §§ 1114, 1116 and 1117, as well as an order requiring Defendants to transfer The Domain Name to Plaintiff.

78. Plaintiff is informed and believes and thereon alleges that based upon the aforesaid loss of sales, Plaintiff has suffered damages in an amount exceeding $2 million, according to proof.

**COUNT TWO**

**FEDERAL FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION**

**(All Defendants - 15 U.S.C. § 1125)**

79. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

80. As set forth in detail above, Defendants' use of one or marks in connection with the promotion and sale of competing jewelry products and jewelry sales through retail (either brick-and-mortar or online) sales services, including, without limitation, using the same in false and deceptive Sponsored Ads and on the Defendants' website, without authorization from Plaintiff, is likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association with Plaintiff, or as to the origin, sponsorship, or approval of the services, or commercial activities by Defendants.

81. Defendants' actions constitute willful unfair competition and false designation of origin and misrepresentation in violation of 15 U.S.C. § 1125(a) with the intent to capitalize on Plaintiff's goodwill.

82. If the acts of Defendants are allowed to continue, Plaintiff will continue to suffer irreparable injury for which it has no adequate remedy at law. Plaintiff is entitled to permanent injunctive relief to prevent such irreparable injury.

83. Plaintiff is entitled to the recovery of damages from each Defendant in an amount to be proven at trial, but which amount exceeds the jurisdictional minimum of this Court. Damages include the actual damages sustained by Plaintiff, corrective

advertising damages, Defendants' profits, trebled or enhanced profits and damages, and the cost of the action together with Plaintiff's reasonable attorney's fees.

**COUNT THREE**

**CALIFORNIA STATE REGISTERED TRADEMARK INFRINGEMENT**

**(All Defendants - Bus. & Prof. Code § 14200)**

84. Plaintiff incorporates by reference the preceding paragraphs as incorporated fully set forth herein.

85. The acts of Defendants complained of herein constitute trademark infringement of a mark registered with the California Secretary of State in violation of California Business and Professions Code Section 14200, et seq., including California Business and Professions Code Section 14245.

86. Defendants' conduct is likely to cause confusion, mistake or deception as to the affiliation, connection, association, endorsement, authorization or origination of Defendants' products and services with the products and services of Plaintiff, and as to the origin, sponsorship or approval of Defendants and their products and services.

87. Defendants had direct and full knowledge of Plaintiff's prior use of and rights in and to the JEWELRY EXCHANGE™ marks before the acts complained of herein.

88. Defendants' unlawful and unfair conduct has led to a material diminution of the reputation and goodwill established by Plaintiff in the JEWELRY EXCHANGE™ marks, which constitutes trademark and service mark infringement in violation of Cal. Bus. & Prof. Code § 14245.

89. As a proximate result of Defendants' actions, Plaintiff has suffered substantial damages in an amount in excess of the jurisdictional limits of this Court and estimated to be $2 million, as well as the continuing loss of goodwill and the reputation that Plaintiff has established over the last four (4) decades that it has been using the JEWELRY EXCHANGE™ marks as set forth above.

90. This continuing loss of goodwill constitutes irreparable harm and injury

for which Plaintiff has no adequate remedy at law. Plaintiff will continue to suffer irreparable harm unless the court enjoins Defendants' conduct.

91. Defendants threaten to continue to do the acts complained of herein, and unless restrained and enjoined, will continue to do so, all to Plaintiff's irreparable damage. Because Plaintiff's remedy at law is not adequate to compensate Plaintiff for injuries threatened, Plaintiff is entitled to seek injunctive relief in addition to damages pursuant to Bus & Prof. Code, §§ 14247,14250.

## COUNT FOUR

## COMMON LAW TRADEMARK INFRINGEMENT

**(All Defendants)**

92. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

93. Plaintiff is the owner of valid and enforceable common law trademark rights in and to the JEWELRY EXCHANGE trademark and service mark for use in connection with fine jewelry and jewelry sales services for both brick-and-mortar retail jewelry store services and online retail jewelry store services.

94. Defendants have used one or more marks on or in connection with the sale, offering for sale, distribution or advertising of jewelry and jewelry sales through online retail jewelry store services, in such a manner as is likely to cause confusion, mistake, or to deceive.

95. Plaintiff has priority of use as between Plaintiff and Defendants.

96. Defendants' activities have caused, and continue to cause, damage to Plaintiff.

97. Defendants' activities have caused, and continue to cause, irreparable harm to Plaintiff's goodwill and reputation.

98. Defendants' activities constitute common law infringement of the JEWELRY EXCHANGE trademark owned by Plaintiff.

/ / /

99. Defendants have been infringing and continue to infringe on The JEWELRY EXCHANGE™ Marks with full knowledge of or at least willful and reckless disregard for Plaintiff's common law rights and knowing that the JEWELRY EXCHANGE trademark is associated with Plaintiff.

100. Defendants' conduct is intentional, willful, wanton, and malicious, and is undertaken with intent to reap the benefit of Plaintiff's goodwill in the JEWELRY EXCHANGE trademark.

101. If the acts of Defendants are allowed to continue, Plaintiff will continue to suffer irreparable injury for which it has no adequate remedy at law. Plaintiff is entitled to permanent injunctive relief to prevent such irreparable injury.

102. Plaintiff is entitled to the recovery of damages from Defendants in an amount to be determined at trial.

**COUNT FIVE**

**CALIFORNIA FALSE ADVERTISING**

**(All Defendants – Bus. & Prof. Code § 17500)**

103. Plaintiff incorporates by reference the preceding paragraphs as incorporated fully set forth herein.

104. As set forth above, Defendants have engaged in conduct, acts and practices of false advertising by making misleading statements in connection with the sale of goods or services to the public within the State of California, in violation of California Business and Professions Code § 17500.

105. Defendants' actions have caused damages and irreparable injury to Plaintiff as set forth above.

**COUNT SIX**

**CALIFORNIA UNFAIR COMPETITION**

**(All Defendants – Bus. & Prof. Code § 17200)**

106. Plaintiff incorporates by reference the preceding paragraphs as incorporated fully set forth herein.

107. As set forth above, Defendants have engaged in conduct, acts and practices of unfair competition by, among other things, making misleading statements in connection with the sale of goods or services to the public within the State of California and using false and deceptive sponsored advertisements all in violation of Cal. Bus. & Prof. Code § 17200.

**COUNT SEVEN**

**COMMON LAW OF UNFAIR COMPETITION**

**(All Defendants)**

108. Plaintiff incorporates by reference the preceding paragraphs as incorporated fully set forth herein.

109. Through the acts and practices alleged above, Defendants have violated the common law of unfair competition, including, continued operation using the name JEWELRY EXCHANGE CENTER to capitalize on the reputation, goodwill and prestige of Plaintiff's rights in and to The JEWELRY EXCHANGE® Marks.

110. Defendants' actions have caused harm and damage to Plaintiff.

**COUNT EIGHT**

**CALIFORNIA ANTI-PHISHING ACT OF 2005**

**(All Defendants - Cal. Bus. & Prof Code § 22948 et seq.)**

111. Plaintiff incorporates by reference the preceding paragraphs as incorporated fully set forth herein.

112. As part of Defendants' conduct described above, Defendants utilize the internet, including, without limitation, the www.jewelryexchangecenter.com web page as well as email mail messages and correspondence, in order to solicit, request, or otherwise induce individuals to provide identifying information (such as their name, address, telephone number, bank account number, credit card or debit card number, and other information that can be used to access the individual's financial accounts) by representing themselves to be Plaintiff and Plaintiff's business without the consent of Plaintiff.

113. Plaintiff has been adversely affected by Defendant's conduct.

114. Pursuant to Cal. Bus. & Prof. Code § 22948.3, Plaintiff is entitled to statutory damages, injunctive relief, the greater of three times the amount of actual damages or five thousand dollars ($5,000) per violation, and an award of reasonable costs and attorney fees.

115. Plaintiff is also entitled to an increase in its recoverable damages in an amount up to three times the damages otherwise recoverable in light of Defendants' pattern and practice notwithstanding Plaintiff's demand to cease and desist such illegal use of the Mark.

**COUNT NINE**

**INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS**

**(All Defendants)**

116. Plaintiff incorporates by reference the preceding paragraphs as incorporated fully set forth herein.

117. As a result of the actions set forth above, Defendants have intentionally interfered with an economic relationship between Plaintiff and one or more third parties that probably would have resulted in an economic benefit to Plaintiff.

118. Defendants knew that the third parties were in an economic relationship Plaintiff that probably would have resulted in an economic benefit to Plaintiff in terms of a completed sale.

119. Defendants engaged in the wrongful conduct set forth above with the intent to disrupt the relationship and in fact disrupted the relationship by completing the sale with the third party in direct harm to Plaintiff in terms of lost sales.

120. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

/ / /

/ / /

/ / /

## COUNT TEN

## NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS

## (All Defendants)

121. Plaintiff incorporates by reference the preceding paragraphs as incorporated fully set forth herein.

122. As a result of the actions set forth above, Defendants have negligently interfered with an economic relationship between Plaintiff and one or more third parties that probably would have resulted in an economic benefit to Plaintiff.

123. Defendants knew, and in some instances should have known, that the third parties were in an economic relationship with Plaintiff that probably would have resulted in an economic benefit to Plaintiff in terms of a completed sale.

124. Defendants failed to act with reasonable care when engaging in the wrongful conduct set forth above.

125. Defendants disrupted the relationship by completing the sale with the third party in direct harm to Plaintiff in terms of lost sales.

126. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

1. That this Court grant a permanent injunction prohibiting Defendants and their officers, partners, agents, subcontractors, servants, employees, subsidiaries and related companies or entities, and all others acting in concert or participation with them from:

   a. Purchasing keywords that are identical or substantially similar to the JEWELRY EXCHANGE® Marks which are likely to cause consumer confusion, mistake, or deception with respect to the JEWELRY EXCHANGE® Marks;

b. Running advertisements (including online sponsored advertisements, sponsored product listings or the like) that display words that are identical or substantially similar to the JEWELRY EXCHANGE®;

c. Using the JEWELRY EXCHANGE® Marks, or any colorable imitation thereof, for any commercial purpose relating to jewelry, jewelry sales and/or any other related goods and/or services;

d. Registering, renewing, or owning any domain name or URL that includes the JEWELRY EXCHANGE® Marks and/or any terms confusingly similar thereto;

e. Making any designations of origin, descriptions, representations or suggestions that Plaintiff is the source, sponsor or in any way affiliated with Defendants, their products, their services and/or their websites;

f. Engaging in any other act constituting unfair competition, false advertising, interference with actual or prospective contractual relations, or deceptive practices with regard to Plaintiff and its affiliated entities or constituting an infringement of Plaintiff's rights in and to the JEWELRY EXCHANGE® Marks; and

g. Engaging in any solicitation in violation of the California Anti-Phishing Law of 2005 relating to Plaintiff.

h. Assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in Paragraph (1) above, including all subparagraphs.

2. For every cause of action for which such relief is permitted, an award of compensatory damages as allowed by law, according to proof;

3. For every cause of action for which such relief is permitted, an award of punitive and exemplary damages together with other penalties as may be provided by law, according to proof.

/ / /

4. For every cause of action for which such relief is permitted, an order requiring Defendants to account to Plaintiff for any and all profits derived by Defendants and for all damages sustained by Plaintiff by reason of Defendants' acts complained of herein.

5. For every cause of action for which such relief is permitted, an award of corrective advertising costs incurred together with future costs of corrective advertising as may be provided by law, according to proof.

6. Due to Defendants' violations of Cal. Bus. & Prof. Code § 22948.2, and pursuant to Cal. Bus. & Prof. Code § 22948.3, statutory damages in an amount to be proven at trial, an increase in the recoverable damages to an amount up to three times the damages otherwise recoverable, and an award of costs of suit and reasonable attorney's fees.

7. A finding and judgment that this case is exceptional;

8. A finding that Defendants are jointly and severally liable for all amounts awarded to Plaintiff;

9. For an award of attorney's fees and costs as may be provided by law; and

10. For such other and further relief as the Court may deem just and proper

Respectfully submitted,

Dated: December 12, 2025

THE KINDER LAW GROUP, APC

By: //s/

Brian P. Kinder, Esq.
19200 Von Karman Ave, Fourth Floor
Irvine, California 92612
Telephone: (949) 216-3070
Facsimile: (949) 216-3074
Email: bkinder@tklglaw.com

LAW OFFICE OF F. ELLIOT GOLDMAN

By: //s/

F. Elliot Goldman, Esq.
420 S. Brea Boulevard
Brea, California 92821
Telephone: (714) 990-3444
Email: felliotgoldman@msn.com

Attorneys for Plaintiff

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. Proc. 38, Plaintiff demands a trial by jury on all claims and issues triable to a jury in this action.

Respectfully submitted,

Dated: December 12, 2025

THE KINDER LAW GROUP, APC

By: //s/

Brian P. Kinder, Esq.
19200 Von Karman Avenue, Fourth Floor
Irvine, California 92612
Telephone: (949) 216-3070
Facsimile: (949) 216-3074
Email: bkinder@tklglaw.com

LAW OFFICE OF F. ELLIOT GOLDMAN

By: //s/

F. Elliot Goldman, Esq.
420 S. Brea Boulevard
Brea, California 92821
Telephone: (714) 990-3444
Email: felliotgoldman@msn.com

Attorneys for Plaintiff